WALTER LEWIS v. W. F. CLEGG.

*Action for False Arrest—Damages.*

1. A plaintiff in an action for injuries resulting from his false imprisonment must show that he has been injured, and can recover only for actual damages, including injury to feelings and mental suffering, and is not entitled to punitive damages unless the arrest was accompanied with malice, gross negligence, insult or other aggravating circumstances.

2. In an action for damages for injuries caused by the defendant's having plaintiff unlawfully arrested and imprisoned, on the ground that he was about to dispose of his property fraudulently, plaintiff alleged that after his arrest certain contracts of employment he had made were rescinded by the other parties, and that a marriage engagement was cancelled. On the trial it appeared that defendant knew that plaintiff had no property except $31.50 due from his employer

for labor, and that the plaintiff had not disposed of any property, and further, that defendant's purpose in having plaintiff arrested was to enforce the payment of a debt of $13.60 due to him from plaintiff, which was accomplished by obtaining an order from plaintiff on his employer; *Held*, that plaintiff was entitled to nominal damages only, in the absence of evidence that the marriage was postponed by reason of the arrest, or that plaintiff underwent any suffering, or that he lost employment or credit, or suffered any injury to his reputation in the community.

CIVIL ACTION, for damages, for unlawfully causing the arrest of plaintiff and the abuse of legal process, tried before *McIver, J.*, and a jury, at July Special Term, 1896, of GUILFORD Superior Court.

The complaint alleged, as a first cause of action, that "on the 9th day of April, 1895, the defendant, William F. Clegg, imprisoned the plaintiff and deprived him of his liberty for the space of twenty-four hours, unlawfully and with force, and without probable cause, on a pretended charge that the plaintiff 'had disposed of his property with intent to defraud his creditors, and was about to depart from the State,' to his great damage, twenty-five hundred dollars."

As a second cause of action the defendant alleges:

"1. That on the 9th day of April, 1895, the defendant applied to J. A. Pritchett, a Justice of the Peace for the county of Guilford, for the process of arrest and bail against the defendant in an action to recover the sum of $13.60 of him, and in order to obtain such order of arrest and bail made affidavit that the defendant was indebted to him in said amount and that he had disposed of his property, with intent to defraud his creditors, and was about to depart from the State.

"2. That upon and by virtue of the said affidavit the defendant procured to be issued an order of arrest against this plaintiff, under which the plaintiff was arrested and

imprisoned for the space of twenty-four hours and compelled to pay, by reason of such detention, the sum of $13.60 and the further sum of $2 costs in the action.

"3. That the above facts set forth in the said affidavit and alleged in the first article of this cause of action, were absolutely false and there was no probable cause for making said arrest, or for arresting and imprisoning this plaintiff.

"4. That the defendant, well knowing that the plaintiff in this action was insolvent, and did not have $500 worth of personal property and had no real estate whatever, which was a fact at the time, and that by the simple process of the law, to-wit, a Summons, Judgment and Execution, he could not make the defendant pay the said sum of $13.60, resorted to this unusual and extraordinary process of arrest and bail for the purpose of making said plaintiff pay the debt aforesaid, well knowing that he was not entitled to such ancillary and unusual process, and that thereby he was relying upon and resorting to such process unlawfully and wrongfully and was thereby abusing the process of the law, while this plaintiff was a resident of this State and was entitled to his exemptions against said debt.

"5. That at the time of the plaintiff's unlawful arrest as aforesaid, he was under contract of marriage with a young lady of about his own age and of a fair name, and that the plaintiff at the time of his arrest was of good name, reputation and credit and had a fair prospect in life, and had made a contract to sell tobacco for responsible parties, by which he had reason to believe he would make a considerable sum of money; by reason, however, of such false arrest he was deprived of the benefits of such contracts and they were rescinded, and he was notified that they would not be fulfilled on the part of the persons making them, and he suffered damages in his reputation, char-

acter and credit, and mentally and physically, and the said contract of marriage was broken off by the said young lady and her parents, and he was forbidden to visit their house, to his damage twenty-five hundred dollars.

"Therefore he demands judgment for the sum of $15.60 extorted from him by the defendant as aforesaid, and the further sum of twenty-five hundred dollars as damages."

The answer of defendant alleged that the proceeding under which plaintiff was arrested was instituted by him in good faith, based on probable cause, he having been informed that plaintiff had sold some property and was on the point of leaving the State, and was, in fact, arrested at 12 o'clock at night at the depot where he was about to take passage on a freight train for Norfolk; that plaintiff justly owed him the debt and that plaintiff was only detained for about two hours and was not imprisoned, and that plaintiff had not been damaged.

On the trial it did not appear that plaintiff had suffered any damage by reason of the arrest; the cancellation of the contract of employment was not caused by the fact that he had been arrested and he had not been refused credit because of such arrest; nor had the mariage been postponed by reason of the arrest.

There was a verdict in favor of the plaintiff for $200 and from the judgment thereon the defendant appealed.

*Mr J. A. Barringer*, for plaintiff.
*Messrs. Jas. E. Boyd* and *F. H. Busbee*, for defendant (appellant).

MONTGOMERY, J.: The defendant knew that the plaintiff had no property except an amount of $31.50 due to him by the railroad company for a month's service already rendered. The defendant, in his testimony, said, "I knew

the plaintiff had little or no property, except his clothes and the amount due him by the railroad.'' With a knowledge of this fact, the defendant sued out arrest and bail proceedings, in which it was alleged that the plaintiff was indebted to him in the sum of $13.60; and that he had disposed of his property with intent to defraud his creditors, and was about to depart from the State. After the arrest had been made, the plaintiff gave the defendant an order on the railroad company for the debt. No return of the proceedings has ever been made by the Justice by whom the process was issued. There was testimony going to show that the defendant had abused the process of the law in having issued these proceedings; that his purpose was not to collect his debt by means of legal remedies invoked in good faith, but to compel the debtor to pay to escape the humiliations and pains of imprisonment. There was no pretense that the plaintiff had disposed of any of his property. Indeed, he had nothing to dispose of except the $31.50, and that sum the defendant knew he had not disposed of. Creditors must learn that they cannot resort to the process of the law to enable them to extort from a debtor that which could not be appropriated to their debts by the law. But the debtor, when he becomes a plaintiff against the creditor in an action to recover damages on account of injuries which he has sustained by reason of his unlawful arrest and the abuse of process of the court by the creditor, must show that he has been injured by such proceedings. If the arrest was accompanied with malice, gross negligence, insult or other aggravating circumstances, punitive damages will be awarded. If not, the plaintiff can recover only for actual damages, including injury to feelings and mental suffering. In the case before us there was, from the testimony, an entire lack of those elements which would subject the defendant to damages as smart

money—punitive damages.   Upon a close scrutiny of the testimony—of the plaintiff's particularly—we are unable to discover that the plaintiff has suffered any damage whatsoever.   There was no testimony that the marriage was delayed or postponed in any way by reason of the arrest; none that the plaintiff underwent mental or physical suffering; none that he lost employment or credit, or suffered any injury to his character and standing in the community.   It is true, that he showed that Mr. Patterson had annulled a business contract with him, but he did not say that that act of Mr. Patterson was on account of the plaintiff's arrest by the defendant or that it had any connection with it: and Mr. Patterson testified that he had not heard of the plaintiff's arrest when the agency was revoked by him.   He also testified that Mr. Vanstory, the keeper of a livery stable, had refused to credit him, but he did not say that the refusal of credit was on account of the plaintiff's arrest.   We are, therefore, of the opinion that his Honor was in error when he refused to instruct the jury sa asked in the defendant's first prayer for instructions, which was in these words: "The plaintiff cannot, upon his allegation, recover exemplary or punitive damages, and there is no evidence of actual damage to plaintiff by reason of the arrest."   It is unnecessary to discuss the other exceptions.   The plaintiff would be entitled to nominal damages and such actual damages as he may show he has sustained.

New Tria .